## IN THE CIRCUIT COURT OF MADISON COUNTY, TENNESSEE
## FOR THE TWENTY-SIXTH JUDICIAL DISTRICT

*FILED*

*AUG 08 2022*

*KATHY BLOUNT, CIRCUIT COURT CLERK*

*DEPUTY CLERK 3:40 P.M.*

**SARAH NELSON,**

        **Plaintiff,**

**vs.**

**STEVENS TRANSPORT, INC.,
PARAGON LEASING, LP, and
PERRY PATTERSON,**

        **Defendants.**

Docket No.: _C-22-195_
Division: _II_
**JURY DEMANDED**

---

### COMPLAINT FOR COMMERCIAL MOTOR VEHICLE NEGLIGENCE

---

    **COMES NOW** the Plaintiff, Sarah Nelson, by and through counsel, J. Neil Umsted, and files this Complaint against the Defendants, Stevens Transport, Inc., Paragon Leasing, LP, and Perry Patterson, for personal injuries and damages, and would respectfully state unto this Honorable Court the following, to wit:

### JURISDICTION AND VENUE

    1.    Plaintiff, Sarah Nelson, respectfully alleges that she is an adult resident citizen of Jackson, Madison County, Tennessee.

    2.    Upon information and belief, Defendant, Stevens Transport, Inc., (hereinafter "Stevens Transport") is a for-profit Texas corporation with its principal place of business located at 9757 Military Parkway, Dallas, Texas 75227 and is amendable to service of process through its designated registered agent Steven L. Aaron, 9757 Military Parkway, Dallas, Texas 75227.

    3.    Upon information and belief, Defendant, Paragon Leasing, LP, (hereinafter "Paragon") is a for-profit Texas corporation with its principal place of business located at 9757

1


EXHIBIT
A

Military Parkway, Dallas, Texas 75227 and is amendable to service of process through its designated registered agent Steven L. Aaron, 9757 Military Parkway, Dallas, Texas 75227.

4.     Upon information and belief, Defendant, Perry Patterson, is an adult resident of Greenwood, Louisiana residing at 8344 Odom Rd., Greenwood, Louisiana 71033.

5.     Plaintiff alleges that this cause of action arises in tort out of personal injuries and damages incurred as a result of an automobile and commercial motor vehicle wreck involving the Plaintiff and these Defendants in Jackson, Madison County, Tennessee on or about August 26, 2021.

6.     Said wreck is the subject matter of this cause of action, and Defendants are therefore subject to the jurisdiction, venue and service of process of this Honorable Court.

## FACTS

7.     Plaintiff alleges that on August 26, 2021, at approximately 4:00 a.m., Defendant Perry Patterson, was operating a commercial motor vehicle, specifically, a 2019 Kenworth Construction tractor truck, VIN 1XKYD49X7KJ242493 and bearing Texas tag number R468435.

8.     Plaintiff alleges that Paragon was the registered owner of the above-referenced truck on August 26, 2021.

9.     Plaintiff alleges that, on August 26, 2021, Paragon was a limited partnership and had one general partner: Stevens Transport, Inc.

10.     Plaintiff alleges that, on August 26, 2021, Paragon and Stevens Transport shared the same principal place of business at 9757 Military Parkway, Dallas, Texas 75227.

11.     Plaintiff alleges that Paragon and Stevens Transport share the same registered agent: Steven L. Aaron.

12.     Plaintiff alleges that Steven L. Aaron is a Director and Chairman of Stevens

2

Transport.

13.     Plaintiff alleges that the 2019 Kenworth Construction tractor truck and trailer in question displayed the Stevens Transport logo on August 26, 2021.

14.     Plaintiff alleges that on August 26, 2021, Stevens Transport was responsible for the care and maintenance of the 2019 Kenworth Construction tractor truck.

15.     Alternatively, Plaintiff alleges that on August 26, 2021, Paragon was responsible for the care and maintenance of the 2019 Kenworth Construction tractor truck.

16.     Plaintiff alleges that on August 26, 2021, Stevens Transport's USDOT was 79466.

17.     Plaintiff alleges that on August 26, 2021, Defendant Patterson was operating the 2019 Kenworth Construction tractor truck with the consent, knowledge and permission of Stevens Transport.

18.     Plaintiff alleges that on August 26, 2021, Defendant Patterson was operating the 2019 Kenworth Construction tractor truck with the consent, knowledge and permission of Paragon.

19.     Plaintiff alleges that on August 26, 2021, Defendant Patterson was an employee, agent and/or servant of Stevens Transport.

20.     Alternatively, Plaintiff alleges that on August 26, 2021, Defendant Patterson was an employee, agent and/or servant of Paragon.

21.     Plaintiff alleges that Defendant Patterson was acting in the course of scope of his employment with Stevens Transport when this wreck occurred.

22.     Alternatively, Plaintiff alleges that Defendant Patterson was acting in the course of scope of his employment with Paragon when this wreck occurred.

23.     Plaintiff alleges that Defendant Patterson, was a statutory employee of Stevens Transport pursuant to *49 CFR § 383.5* when this wreck occurred.

3

24.     Plaintiff alleges that Defendant Patterson, was a statutory employee of Paragon pursuant to *49 CFR § 383.5* when this wreck occurred.

25.     Plaintiff alleges that on August 26, 2021 at approximately 4:00 a.m., she was driving a 2003 Honda Pilot, which she owned, southbound on Highway 70 in Jackson, Tennessee.

26.     Plaintiff alleges that at or around the same time and location, Defendant Patterson was driving the 2019 Kenworth Construction truck northbound on Highway 70.

27.     Plaintiff alleges that as she approached the entrance/exit ramp to I-40, Defendant Patterson, suddenly, negligently and without warning, made a left turn from Highway 70 onto the I-40 entrance ramp.

28.     Plaintiff alleges that when Defendant Patterson made the sudden left turn onto the entrance ramp, the tractor trailer he was operating obstructed her lane of traffic, causing her vehicle to crash into the trailer.

29.     Plaintiff alleges that this collision caused disabling damage to her vehicle.

30.     Plaintiff alleges that after she crashed into the truck, Defendant Patterson continued to drive westbound on I-40, leaving the scene of the crash.

31.     Plaintiff alleges that Defendant Patterson did not return to the scene until approximately fifteen minutes later.

32.     Plaintiff alleges that the impact sustained during this collision resulted in the injuries and damages hereinafter described.

33.     Plaintiff alleges that the injuries and damages were the direct and proximate result of the Defendant's negligence.

4

## AGENCY, MASTER SERVANT, RESPONDEAT SUPERIOR, AND JOINT VENTURE

34.     Plaintiff incorporates by reference the allegations contained in each previous paragraph as if set forth fully herein.

35.     Plaintiff alleges that Stevens Transport, Paragon and Defendant Patterson are all vicariously liable for any negligence of each other under the doctrines of Agency, Master Servant, Respondeat Superior and Joint Venture.

36.     Plaintiff alleges that Defendant Patterson was operating a vehicle owned by Paragon at the time of this collision for purposes of Tenn. Code Ann. § 55-10-311.

37.     Alternatively, Plaintiff alleges that Defendant Patterson was operating a vehicle owned by Stevens Transport at the time of this collision for purposes of Tenn. Code Ann. § 55-10-311.

38.     Plaintiff alleges that Defendant Patterson was operating a vehicle registered in the name of Paragon at the time of this collision for purposes of Tenn. Code Ann. § 55-10-312.

39.     Alternatively, Plaintiff alleges that Defendant Patterson was operating a vehicle registered in the name of Stevens Transport at the time of this collision for purposes of Tenn. Code Ann. § 55-10-312.

40.     Plaintiff alleges that Defendant Patterson was employed by Stevens Transport at the time of the collision that is the subject of this lawsuit.

41.     Alternatively, Plaintiff alleges that Defendant Patterson was employed by Paragon at the time of the collision that is the subject of this lawsuit.

42.     Plaintiff alleges that Defendant Patterson was operating the 2019 Kenworth Construction truck within the course and scope of his employment with Stevens Transport.

43.     Alternatively, Plaintiffs allege that Defendant Patterson was operating the 2019

Kenworth Construction truck within the course and scope of his employment with Paragon.

44.     Plaintiff alleges that Defendant Patterson was operating the 2019 Kenworth Construction truck with the authority, consent, and knowledge of Stevens Transport at the time of the collision that is the subject of this lawsuit.

45.     Alternatively, Plaintiff alleges that Defendant Patterson was operating the 2019 Kenworth Construction truck with the authority, consent, and knowledge of Paragon at the time of the collision that is the subject of this lawsuit.

46.     Plaintiff alleges that Defendant Patterson was operating the 2019 Kenworth Construction truck for the benefit of Stevens Transport at the time of the collision that is the subject of this lawsuit.

47.     Alternatively, Plaintiff alleges that Defendant Patterson was operating the 2019 Kenworth Construction truck for the benefit of Paragon at the time of the collision that is the subject of this lawsuit.

48.     Plaintiff alleges that Stevens Transport and Paragon jointly carried out the operations of a truckload carrier providing supply chain and logistics services for profit during the time in question.

49.     Plaintiff alleges that Stevens Transport and Paragon are partners in the operations of a truckload carrier.

50.     Plaintiff alleges that, in furtherance of the above-referenced joint venture, Stevens Transport and Paragon combined their efforts, property, money, skill, and knowledge, with a community of interest and control between them regarding the operation and/or profits of the association.

51.     Plaintiff alleges that Stevens Transport and Paragon are jointly liable for the

negligent acts and/or omissions of each other, their employees and/or agents.

52.     Plaintiff alleges that Defendant Patterson was acting within the scope of Stevens Transport and Paragon's joint enterprise when this wreck occurred.

### ACTS AND/OR OMISSIONS OF NEGLIGENCE—PERRY PATTERSON

53.     Plaintiff incorporates by reference the allegations contained in each previous paragraph as if set forth fully herein.

54.     Plaintiff charges and avers that Defendant, Perry Patterson, had a duty to operate the commercial motor vehicle in compliance with:

   a.   The laws of the State of Tennessee;

   b.   The City Ordinances of Jackson, Tennessee

   c.   The Federal Motor Carrier Safety Regulations;

   d.   Trucking industry standards and guidelines governing the safe operation of a commercial motor vehicle;

   e.   Corporate standards and guidelines imposed upon him by the motor carrier(s) for whom he was driving; and

   f.   Reasonable care for a commercial motor vehicle operator under the circumstances.

55.     Plaintiff charges and alleges that Defendant Perry Patterson, is guilty of one, some, or all of the following acts and/or omissions of common law negligence which are imputed to Stevens Transport and/or Paragon, to-wit:

   a.   Negligently failing to use that degree of care and caution in the operation of a commercial motor vehicle as was required of a reasonable and prudent commercial driver under the same or similar circumstances existing at the time and place of the aforementioned collision;

   b.   Negligently failing to maintain a proper and safe lookout ahead while operating

7

a commercial motor vehicle;

c. Negligently failing to maintain proper control of the commercial motor vehicle under the existing circumstances;

d. Negligently failing to devote full time and attention to the operation of the commercial motor vehicle;

e. Negligently failing to adequately and reasonably monitor the flow of traffic;

f. Negligently failing to use reasonable care to avoid injury to others while operating a commercial motor vehicle;

g. Negligently failing to warn the Plaintiff;

h. Negligently failing to avoid a collision when the defendant knew and/or should have known that a collision was imminent;

i. Negligently violating minimum safe driving skills and practices involving visual search, space management, speed management, hazard perception, health of driver, and fatigue and awareness;

j. Negligently failing to yield to traffic traveling on Highway 70;

k. Negligently and carelessly failing to apply his brakes, alter his direction of travel or take any other appropriate action when he, by the exercise of due and reasonable care of a commercial motor vehicle operator should have seen Plaintiff's vehicle;

l. Negligently operating a commercial motor vehicle while fatigued;

m. Reckless driving; and

n. Driving while distracted.

56.   Plaintiff alleges that at the time of the wreck in question, the following statutes of the State of Tennessee were in full force and effect and were violated by the Defendant, Perry Patterson, constituting negligence *per se*, which acts of negligence is imputed to Stevens Transport and/or Paragon, to-wit:

> **Section 55-8-103:  Required obedience to traffic laws –**
> *It is unlawful and, unless otherwise declared in this chapter and chapter 10, parts 1-5 of this title with respect to particular*

8

*offenses, it is a Class C misdemeanor, for any person to do any act forbidden or fail to perform any act required in this chapter and chapter 10 of this title.*

**Section 55-8-142: Turning movements-**
*(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in § 55-8-140, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until this movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in §§ 55-8-143 and 55-8-144 in the event any other traffic may be affected by this movement.*

**Section 55-8-136: Drivers to exercise due care –**
*(b) Notwithstanding any speed limit or zone in effect at the time, or right of way rules that may be applicable, every driver of a motor vehicle shall exercise due care to avoid colliding with any other motor vehicle, either being driven or legally parked, upon any roadway, or any road sign, guard rail or any fixed object legally placed within or beside the roadway right of way, by operating such motor vehicle at a safe speed, by maintaining a safe lookout, by keeping such motor vehicle under proper control and by devoting full time and attention to operating such motor vehicle, under the existing circumstances to avoid endangering life, limb or property.*

**Section 55-10-202: Operating a vehicle contrary to law –**
*(a) It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law.*

**Section 55-10-205: Reckless Driving**
*(a) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving.*

57.     Plaintiff charges and alleges that Defendant, Perry Patterson, violated certain ordinances of the City of Jackson which were in full force and effect at the time and place of the collision and applicable as set forth in the City of Jackson Municipal Code, constituting negligence *per se*, imputed to Stevens Transport and/or Paragon, to wit:

9

**Section 15-403.** **Reckless driving.**
Irrespective of the posted speed limit, no person, including operators of emergency vehicles, shall drive any vehicle in willful or wanton disregard for the safety of persons or property.

**Section 15-601.** **Turning movements generally.**
No person operating a motor vehicle shall make any turning movement which might affect any pedestrian or the operation of any other vehicle without first ascertaining that such movement can be made in safety and signaling his intention in accordance with the requirements of the state law.

58.    Plaintiff further charges and avers that at the time of the wreck in question, the following rules and regulations of the Federal Motor Carrier Safety Act were in full force and effect and were violated by Defendant Perry Patterson constituting *negligence per se*, which are imputed to Stevens Transport and/or Paragon, to-wit:

**§392.1  Scope of the rules in this part.**
(a) Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part.

**§392.2  Applicable operating rules.**
Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with.

**§392.3  Ill or fatigued operator.**
No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by

10

compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.

## §392.80   Prohibition against texting.

(a) *Prohibition.* No driver shall engage in texting while driving.

(b) *Motor carriers.* No motor carrier shall allow or require its drivers to engage in texting while driving.

(c) *Definition.* For the purpose of this section only, *driving* means operating a commercial motor vehicle, with the motor running, including while temporarily stationary because of traffic, a traffic control device, or other momentary delays. Driving does not include operating a commercial motor vehicle with or without the motor running when the driver moved the vehicle to the side of, or off, a highway, as defined in 49 CFR 390.5, and halted in a location where the vehicle can safely remain stationary.

(d) *Emergency exception.* Texting while driving is permissible by drivers of a commercial motor vehicle when necessary to communicate with law enforcement officials or other emergency services.

## §392.82   Using a hand-held mobile telephone.

(a)     (1) No driver shall use a hand-held mobile telephone while driving a CMV.

(2) No motor carrier shall allow or require its drivers to use a hand-held mobile telephone while driving a CMV.

(b) *Definitions.* For the purpose of this section only, *driving* means operating a commercial motor vehicle on a highway, including while temporarily stationary because of traffic, a traffic control device, or other momentary delays. Driving does not include operating a commercial motor vehicle when the driver has moved the vehicle to the side of, or off, a highway and has halted in a location where the vehicle can safely remain stationary.

## §383.111   Required knowledge.

(a) All CMV operators must have knowledge of the following 20 general areas:

11

(1) *Safe operations regulations.* Driver-related elements of the regulations contained in parts 391, 392, 393, 395, 396, and 397 of this subchapter, such as:

    (i) Motor vehicle inspection, repair, and maintenance requirements;

    (ii) Procedures for safe vehicle operations;

    (iii) The effects of fatigue, poor vision, hearing impairment, and general health upon safe commercial motor vehicle operation;

    (iv) The types of motor vehicles and cargoes subject to the requirements contained in part 397 of this subchapter; and

    (v) The effects of alcohol and drug use upon safe commercial motor vehicle operations.

(2) *Safe vehicle control systems.* The purpose and function of the controls and instruments commonly found on CMVs.

(3) *CMV safety control systems.* (i) Proper use of the motor vehicle's safety system, including lights, horns, side and rear-view mirrors, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through instruments, motor vehicle operation characteristics, and diagnosing malfunctions.

    (ii) CMV drivers must have knowledge of the correct procedures needed to use these safety systems in an emergency situation, e.g., skids and loss of brakes.

(4) *Basic control.* The proper procedures for performing various basic maneuvers, including:

    (i) Starting, warming up, and shutting down the engine;

    (ii) Putting the vehicle in motion and stopping;

    (iii) Backing in a straight line; and

    (iv) Turning the vehicle, e.g., basic rules, off tracking, right/left turns and right curves.

(5) *Shifting*. The basic shifting rules and terms for common transmissions, including:

(i) Key elements of shifting, e.g., controls, when to shift, and double clutching;

(ii) Shift patterns and procedures; and

(iii) Consequences of improper shifting.

(6) *Backing*. The procedures and rules for various backing maneuvers, including:

(i) Backing principles and rules; and

(ii) Basic backing maneuvers, e.g., straight-line backing, and backing on a curved path.

(7) *Visual search*. The importance of proper visual search, and proper visual search methods, including:

(i) Seeing ahead and to the sides;

(ii) Use of mirrors; and

(iii) Seeing to the rear.

(8) *Communication*. The principles and procedures for proper communications and the hazards of failure to signal properly, including:

(i) Signaling intent, e.g., signaling when changing direction in traffic;

(ii) Communicating presence, e.g., using horn or lights to signal presence; and

(iii) Misuse of communications.

(9) *Speed management*. The importance of understanding the effects of speed, including:

(i) Speed and stopping distance;

(ii) Speed and surface conditions;

13

(iii) Speed and the shape of the road;

(iv) Speed and visibility; and

(v) Speed and traffic flow.

(10) *Space management.* The procedures and techniques for controlling the space around the vehicle, including:

(i) The importance of space management;

(ii) Space cushions, e.g., controlling space ahead/to the rear;

(iii) Space to the sides; and

(iv) Space for traffic gaps.

(11) *Night operation.* Preparations and procedures for night driving, including:

(i) Night driving factors, e.g., driver factors (vision, glare, fatigue, inexperience);

(ii) Roadway factors (low illumination, variation in illumination, unfamiliarity with roads, other road users, especially drivers exhibiting erratic or improper driving); and

(iii) Vehicle factors (headlights, auxiliary lights, turn signals, windshields and mirrors).

(12) *Extreme driving conditions.* The basic information on operating in extreme driving conditions and the hazards encountered in such conditions, including:

(i) Bad weather, e.g., snow, ice, sleet, high wind;

(ii) Hot weather; and

(iii) Mountain driving.

(13) *Hazard perceptions.* The basic information on hazard perception and clues for recognition of hazards, including:

(i) Road characteristics; and

14

(ii) Road user activities.

(14) *Emergency maneuvers.* The basic information concerning when and how to make emergency maneuvers, including:

(i) Evasive steering;

(ii) Emergency stop;

(iii) Off road recovery;

(iv) Brake failure; and

(v) Blowouts.

(15) *Skid control and recovery.* The information on the causes and major types of skids, as well as the procedures for recovering from skids.

(16) *Relationship of cargo to vehicle control.* The principles and procedures for the proper handling of cargo, including:

(i) Consequences of improperly secured cargo, drivers' responsibilities, and Federal/State and local regulations;

(ii) Principles of weight distribution; and

(iii) Principles and methods of cargo securement.

(17) *Vehicle inspections.* The objectives and proper procedures for performing vehicle safety inspections, as follows:

(i) The importance of periodic inspection and repair to vehicle safety.

(ii) The effect of undiscovered malfunctions upon safety.

(iii) What safety-related parts to look for when inspecting vehicles, e.g., fluid leaks, interference with visibility, bad tires, wheel and rim defects, braking system defects, steering system defects, suspension system defects, exhaust system defects, coupling system defects, and cargo problems.

(iv) Pre-trip/enroute/post-trip inspection procedures.

15

(v) Reporting findings.

(18) *Hazardous materials.* Knowledge of the following:

    (i) What constitutes hazardous material requiring an endorsement to transport;

    (ii) Classes of hazardous materials;

    (iii) Labeling/placarding requirements; and

    (iv) Need for specialized training as a prerequisite to receiving the endorsement and transporting hazardous cargoes.

(19) *Mountain driving.* Practices that are important when driving upgrade and downgrade, including:

    (i) Selecting a safe speed;

    (ii) Selecting the right gear; and

    (iii) Proper braking techniques.

(20) *Fatigue and awareness.* Practices that are important to staying alert and safe while driving, including;

    (i) Being prepared to drive;

    (ii) What to do when driving to avoid fatigue;

    (iii) What to do when sleepy while driving; and

    (iv) What to do when becoming ill while driving.

(b) *Air brakes.* All CMV drivers operating vehicles equipped with air brakes must have knowledge of the following 7 areas:

(1) General air brake system nomenclature;

(2) The dangers of contaminated air supply (dirt, moisture, and oil);

(3) Implications of severed or disconnected air lines between the power unit and the     trailer(s);

16

(4) Implications of low air pressure readings;

(5) Procedures to conduct safe and accurate pre-trip inspections, including knowledge about:

    (i) Automatic fail-safe devices;

    (ii) System monitoring devices; and

    (iii) Low pressure warning alarms.

(6) Procedures for conducting en route and post-trip inspections of air-actuated brake systems, including:

    (i) Ability to detect defects that may cause the system to fail;

    (ii) Tests that indicate the amount of air loss from the braking system within a specified period, with and without the engine running; and

    (iii) Tests that indicate the pressure levels at which the low air pressure warning devices and the tractor protection valve should activate.

(7) General operating practices and procedures, including:

    (i) Proper braking techniques;

    (ii) Antilock brakes;

    (iii) Emergency stops; and

    (iv) Parking brake.

(c) *Combination vehicles.* All CMV drivers operating combination vehicles must have knowledge of the following 3 areas:

(1) Coupling and uncoupling—The procedures for proper coupling and uncoupling a tractor to a semi-trailer;

(2) Vehicle inspection—The objectives and proper procedures that are unique for performing vehicle safety inspections on combination vehicles; and

(3) General operating practices and procedures, including:

(i) Safely operating combination vehicles; and

(ii) Air brakes.

**§383.113   Required skills.**

(a) *Pre-trip vehicle inspection skills.* Applicants for a CDL must possess the following basic pre-trip vehicle inspection skills for the vehicle class that the driver operates or expects to operate:

  (1) *All test vehicles.* Applicants must be able to identify each safety-related part on the vehicle and explain what needs to be inspected to ensure a safe operating condition of each part, including:
  (i) Engine compartment;

  (ii) Cab/engine start;

  (iii) Steering;

  (iv) Suspension;

  (v) Brakes;

  (vi) Wheels;

  (vii) Side of vehicle;

  (viii) Rear of vehicle; and

  (ix) Special features of tractor trailer, school bus, or coach/transit bus, if this type of vehicle is being used for the test.

  (2) *Air brake equipped test vehicles.* Applicants must demonstrate the following skills with respect to inspection and operation of air brakes:

    (i) Locate and verbally identify air brake operating controls and monitoring devices;

    (ii) Determine the motor vehicle's brake system condition for proper adjustments and that
    air system connections between motor vehicles have been properly made and secured;

(iii) Inspect the low pressure warning device(s) to ensure that they will activate in    emergency situations;

(iv) With the engine running, make sure that the system maintains an adequate supply of compressed air;

(v) Determine that required minimum air pressure build up time is within acceptable    limits and that required alarms and emergency devices automatically deactivate at the proper pressure level; and

(vi) Operationally check the brake system for proper performance.

(b) *Basic vehicle control skills.* All applicants for a CDL must possess and demonstrate the following basic motor vehicle control skills for the vehicle class that the driver operates or expects to operate:

(1) Ability to start, warm up, and shut down the engine;

(2) Ability to put the motor vehicle in motion and accelerate smoothly, forward and backward;

(3) Ability to bring the motor vehicle to a smooth stop;

(4) Ability to back the motor vehicle in a straight line, and check path and clearance while backing;

(5) Ability to position the motor vehicle to negotiate safely and then make left and right turns;

(6) Ability to shift as required and select appropriate gear for speed and highway conditions; and

(7) Ability to back along a curved path.

(c) *Safe on-road driving skills.* All applicants for a CDL must possess and demonstrate the following safe on-road driving skills for their vehicle class:

(1) Ability to use proper visual search methods;

(2) Ability to signal appropriately when changing direction in traffic;

19

(3) Ability to adjust speed to the configuration and condition of the roadway, weather and visibility conditions, traffic conditions, and motor vehicle, cargo and driver conditions;

(4) Ability to choose a safe gap for changing lanes, passing other vehicles, as well as for crossing or entering traffic;

(5) Ability to position the motor vehicle correctly before and during a turn to prevent other vehicles from passing on the wrong side, as well as to prevent problems caused by off-tracking;

(6) Ability to maintain a safe following distance depending on the condition of the road, visibility, and vehicle weight;

(7) Ability to adjust operation of the motor vehicle to prevailing weather conditions including speed selection, braking, direction changes, and following distance to maintain control; and

(8) Ability to observe the road and the behavior of other motor vehicles, particularly before changing speed and direction.

(d) *Test area.* Skills tests shall be conducted in on-street conditions or under a combination of on-street and off-street conditions.

(e)    *Simulation technology.* A State may utilize simulators to perform skills testing, but under no circumstances as a substitute for the required testing in on-street condition.

59.    Plaintiff charges and aver that one, some, or all aforesaid acts of common law negligence, violations of the Tennessee Code Annotated, Memphis City Ordinances and Federal Motor Carrier Safety Act rules and regulations by Defendant Perry Patterson, imputed to Steven Transport and/or Paragon, were a direct and proximate cause of the wreck at issue and Plaintiff's resulting injuries and damages.

## INJURIES AND DAMAGES

60.     Plaintiff Sarah Nelson alleges that, as a direct and proximate result of the herein above described violations of the common law, federal regulations, state statutes and city ordinances by Defendant Perry Patterson, which are imputed to Stevens Transport and/or Paragon, Plaintiff sustained multiple injuries to her body as a whole, including but not limited to injuries to the muscles, connective tissue and ligaments in her neck, back, bi-lateral shoulders, and chest.

61.     Plaintiff further alleges that he has incurred reasonable and necessary medical expenses in order to alleviate her pain and suffering and verily believes that he will incur said expenses in the future.

62.     Plaintiff further alleges that she has endured pain and suffering and will continue to suffer from the injuries arising out of the subject wreck.

63.     Plaintiff further alleges that she has sustained a loss of quality and enjoyment of the normal pleasures of life as a result of the subject wreck, past, present and future.

64.     Plaintiff alleges that she has suffered garden variety mental anguish as a result of the subject wreck past, present, and future.

65.     Plaintiff further alleges that she has sustained lost wages and a loss of earning capacity as a result of the subject wreck, past, present and future.

## RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Sarah Nelson, respectfully sues Defendants, Stevens Transport, Inc., Paragon Leasing, LP, and Perry Patterson, for a reasonable amount of restitution and compensation for damages to be determined by twelve Honorable and good citizens of Madison County but not to exceed the sum of **FIVE HUNDRED THOUSAND AND 00/100 ($500,000.00).**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays for damages as they may appear on the trial of this cause reserving the right to amend this pleading to conform to the facts as they may develop, for cost and interest and for all other general relief justified by the facts under the law or equity.

Respectfully submitted,

NAHON SAHAROVICH & TROTZ, PLC

J. Neil Umsted (BPR#27597)
Attorney for the Plaintiffs
488 South Mendenhall Road
Memphis, Tennessee 38117
(901) 347-6074
numsted@nstlaw.com

22